Filed 5/11/22  Pilcher v. Pilcher CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SHERYL R. PILCHER, | D079316 |
| Respondent, | |
| v. | (Super. Ct. No. 18FDV01835S) |
| EVAN PILCHER, | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, James T. Atkins, Commissioner.  Affirmed with directions to correct the record.

Moshtael Family Law, Navid Moshtael and Daniel R. Knowlton for Appellant.

Kathryn J. Yavenditti for Respondent.

# INTRODUCTION

Appellant Evan Pilcher appeals from an order of the trial court granting respondent Sheryl Pilcher's[1] request to renew a restraining order under the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.). Evan raises a number of specific challenges to the trial court's order; all of his arguments stem from his principal contention that the trial court erred in granting Sheryl's request to renew the restraining order because in renewing the restraining order, the court also improperly renewed an order limiting Evan's visitation with the parties' children.

Our review of the record demonstrates that the trial court's oral pronouncement of its order renewing the restraining order does not include a ruling regarding Pilcher's custody and/or visitation rights. Rather, the record demonstrates that in the written documentation submitted by Sheryl requesting the renewal of the restraining order protecting her, which included the original restraining order, a form that had been attached to Sheryl's original request for a restraining order—i.e., form DV-140 regarding child custody and visitation—remained attached to the original restraining order. The trial court's oral statements demonstrate that the trial court did not renew any order regarding the custody or visitation with the children. To the extent that the written record in this case is ambiguous as a result of the inclusion of the original form DV-140 as an attachment to original form DV-130, which was itself attached to the court's renewal order, the ambiguity constitutes correctable clerical error.

We therefore affirm the order of the trial court renewing the restraining order, and we remand to the trial court with directions to correct

---

[1] For clarity, we refer to the parties by their first names.

2

any clerical errors in the clerk's transcript that indicate that the trial court renewed an order denying Evan visitation with the children.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2018, Sheryl requested a DVRO be entered against Evan. The precipitating factual basis for Sheryl's request was that Evan had pushed Sheryl to the ground as she was holding one of their three children. Sheryl sought protection only for herself and indicated that she was not seeking an order protecting other family members. However, Sheryl requested orders regarding child custody and visitation in connection with her request for a DVRO.[2]

On May 17, 2018, the court entered a three-year DVRO on form DV-130, restraining Evan from, among other things, contacting Sheryl, and requiring that he move out of the family home and not come within 100 yards of Sheryl. Attached to form DV-130 was form DV-140, titled "Child Custody and Visitation Order."[3] On form DV-130, in the spaces where the court could mark a box next to "Attached pages are orders" and a box next to "DV-140," the court did not indicate that there was an attached form DV-140 order.[4]

---

[2] Sheryl sought sole legal and physical custody, as well as no visitation for Evan, pending the hearing on her April 2018 DVRO request.

[3] The attached form DV-140 includes a mark next to a box indicating that there would be no visitation granted to Evan. Form DV-140 does not include a space for a judicial officer to sign the form; rather, form DV-140 appears to be intended for use only in conjunction with form DV-130, which does include a line for the judicial officer's signature.

[4] Paragraph number 27 on form DV-130 includes a box next to the sentence "Attached pages are orders." Under this sentence, paragraph 27 continues:

3

On February 18, 2020, in a separate dissolution proceeding (case No. 18FL006412S), the trial court entered a "Stipulation and Order for Custody and/or Visitation of Children" (some capitalization omitted) pertaining to the parties' children.[5]  This document demonstrates that Sheryl

---

- Number of pages attached to this seven-page form: _____
- All of the attached pages are part of this order.
- Attachments include (*check all that apply*):
  [_] DV-140  [_] DV-145  [_] DV-150  [_] FL-342  [_] FL-343  [_] DV-900
  [_] Other (*specify*): _____

As it was entered on May 17, 2018, all of the spaces and boxes in paragraph 27 of form DV-130 were left blank.

[5]  Sheryl filed an unopposed request for judicial notice seeking to have this court take judicial notice of three documents.  The first is the "Stipulation and Order for Custody and/or Visitation of Children" (some capitalization omitted) entered on February 18, 2020, in the parties' marital dissolution proceeding, case No. 18FL006412S.

The second is a minute order entered on March 9, 2021, in the marital dissolution proceeding reflecting what occurred at a hearing on Sheryl's motion to modify custody to permit her to move back to California; although the record is not clear, it appears that at some point, Sheryl had moved with the children to Virginia due to her military orders.  In the minute order, the court states the following:

> "Both counsel have informed the Court that Respondent
> has filed [a] case in Virginia.  Court information is:
> Hampton VA Juvenile and Domestic Relationship court
> Virginia Case: JJ 0758 9501 00; JJ0758 9602 00 (Same
> Parties) . . .

> "This Court will contact the Virginia court regarding
> UCCJEA jurisdiction."

The third document is a minute order entered on April 1, 2021, in case No. 18FL006412S, which reflects that the trial court "conducted a UCCJEA conference with Hampton VA Juvenile and Domestic Relations court."  The court states that it "determined that Virginia is the children's home state," and that "[t]o the extent California retains continuing and exclusive jurisdiction over the children, California hereby relinquishes its jurisdiction."

4

was granted sole legal and physical custody of the children, while Evan was granted supervised visitation, which was to take place in Virginia. Subsequent minute orders entered in the dissolution proceeding demonstrate that Evan initiated a child custody proceeding in Virginia, that the trial court determined that Virginia was the children's home state, and that California relinquished jurisdiction over the children, in favor of Virginia, under the UCCJEA.

On February 22, 2021, before the 2018 DVRO expired, Sheryl filed a "Request to Renew Restraining Order." Sheryl attached a full copy of the May 17, 2018 order to her request, which included both form DV-130 and form DV-140.

The court held a hearing on Sheryl's request to renew the DVRO on April 22, 2021. At the hearing, the court took testimony from the parties and made a finding that Sheryl had a genuine and reasonable apprehension of future abuse. The court orally stated that it was granting Sheryl's request to renew the DVRO for a period of five years, with the "[s]ame terms and conditions as the order that was issued on May 17th, 2018."

On that date, the court filed both a minute order as well as form DV-730, titled "Order to Renew Domestic Violence Restraining Order." In form DV-730, the court marked the box indicating that the request to renew the "attached" May 17, 2018 restraining order was "GRANTED," and that the restraining order would now expire on April 22, 2026. Attached to form DV-

---

We conclude that these documents are judicially noticeable pursuant to Evidence Code sections 452, subdivision (d) and 459. Because these documents are helpful to this court's understanding of the underlying proceedings in which the parties have been engaged, we grant Sheryl's request for judicial notice as to all three documents.

5

730 was a copy of form DV-130, as signed and filed May 17, 2018, as well as the form DV-140 that had been attached to the May 17, 2018 form DV-130.

Evan filed a timely notice of appeal from the court's April 22, 2021 order renewing the May 17, 2018 restraining order.

## III.

## DISCUSSION

Evan takes issue with the trial court's inclusion of the original form DV-140, attached to the May 17, 2018 form DV-130, in connection with the court's April 2021 order renewing the restraining order protecting Sheryl. He argues that the 2021 order renewing the 2018 restraining order is "ambiguous" because the 2018 form DV-140 is attached to the order. According to Evan, the renewal order explains that it renews the " 'attached restraining order,' " which is comprised of the original form DV-130, as well as the original form DV-140 that was attached to the original form DV-130. He explains that although the original form DV-130 "fails . . . to list the children on its page 1, to allow peaceful contact, on its page 2, para. 6, and fails to check, at its p[age] 3, para. 12, to order the attached DV-140," the attached form DV-140, "list[s] the children, and order[s] 'No visitation to Dad.' " According to Evan, the inclusion of the original form DV-140, attached to the original form DV-130, resulted in an ambiguous order that the trial court entered in error.

In the alternative, Evan sets forth a number of additional arguments based on the presumption that the renewal order actually has the effect of also renewing the prior order that denied him visitation with his children, rather than being ambiguous with respect to that no-visitation order.[6]

---

[6] For example, Evan contends that the trial court should have "ascertained exactly what was the present order that the DV-140 modified"

6

Our review of the record demonstrates that Evan's appeal is based on a flawed premise—i.e., that the trial court's April 2021 order renewing the 2018 restraining order included an order renewing the no-visitation order that was reflected in the form DV-140 attached to the original form DV-130.

The reporter's transcript of the April 22, 2021 hearing on Sheryl's request to renew the restraining order reflects that Sheryl's attorney clearly stated that Sheryl was requesting only an order renewing the restraining order that protected her, alone, and that she was not requesting any order involving the children. Sheryl's attorney stated, "I would just indicate, as the court knows, that the custody matter has been sent to Virginia. *So the children are not involved in this matter*. This is her [i.e., Sheryl's] restraining order." (Italics added.) The hearing transcript also reveals that neither party presented evidence regarding custody or visitation, and the trial court did not inquire about any issues pertaining to custody or visitation. The reporter's transcript further reflects that the court intended to order only the renewal of a restraining order that would restrain Evan's conduct vis-à-vis Sheryl:

> "THE COURT: All right. Thank you, everybody. [¶]
> I am -- the court is going to grant the renewal request. [¶]

---

before renewing it. Inherent in this argument is a presumption that the form DV-140 was also renewed by the court's renewal order, and that its renewal resulted in the modification of any custody and visitation orders that were otherwise in place as of April 22, 2021. Evan also contends that in issuing the no-visitation order through the form DV-140 attachment, the court failed to "utilize the best interest of the child standard" (capitalization omitted) as required by the Family Code, and that there was insufficient evidence that any visitation, even supervised, would be detrimental to the children. These arguments, too, assume that the court did in fact enter a no-visitation order. Evan's final argument also assumes that the court ordered no visitation, and asserts that in doing so, the court denied him "his liberty interest in being a father to his children."

7

The court finds that the protected party has, by a preponderance of the evidence, shown she entertains a reasonable apprehension of future abuse; that a reasonable person in the same circumstances would have a reasonable apprehension of future abuse unless the restraining order is renewed. The court believes and finds that the protected party's apprehension is genuine and reasonable.

"Also, the court finds that the underlying findings and facts support the issuance of the renewal.

"I'm going to renew the restraining order for a period of five years. It will expire April 22, 2026, at 6:00 o'clock p.m. Same terms and conditions as the order that was issued on May 17th, 2018.

"We will -- I know there's [a] custody and visitation order that -- will this court --

"[¶] . . . [¶]

"THE COURT: I don't know what's happening with the case, whether it's in Virginia or -- I think it was Virginia or coming back here. To the extent the case is going to return to this court, then either of you can file a request to modify custody and visitation and we can talk about those other issues."

The transcript of the hearing and the court's oral pronouncement of its order, as stated above, makes it clear that the court did not intend to enter any custody or visitation order, and that it did not in fact enter an order regarding custody or visitation when it renewed the restraining order as to Sheryl. However, the formal written order of the court renewing the restraining order incorporates by attachment not only the 2018 form DV-130 (i.e., the restraining order document), but also the 2018 form DV-140 (i.e., the order regarding custody and visitation that was attached to the 2018 form DV-130).

8

Where " ' "a record that is in conflict" ' " cannot be harmonized, " 'we do not automatically defer to the reporter's transcript, but rather adopt the transcript that should be given greater credence under the circumstances of the particular case.' " (*In re D.B.* (2018) 24 Cal.App.5th 252, 257–258; see *In re Malik J.* (2015) 240 Cal.App.4th 896, 905 ["If 'an irreconcilable conflict exists between the transcripts of the court reporter and the court clerk, the modern rule is not automatic deference to the reporter's transcript, but rather adoption of the transcript due more credence under all the surrounding circumstances' "]; see, e.g., *In re T.M.* (2009) 175 Cal.App.4th 1166, 1170, fn. 2 ["[t]he court's specific statements in the reporter's transcript make it clear that [certain] findings should . . . have been stricken in the attachment to the minute order"].)  Although we do not automatically defer to the reporter's transcript in every situation, it is clear that in *this* situation, the reporter's transcript more accurately reflects the court's intended order in this matter.  (See *In re D.B., supra*, 24 Cal.App.5th at pp. 257–258.)  The trial court specifically acknowledged that there were other custody and visitation orders in effect, and the court's comments indicate that the court had no intention of affecting those orders through the renewal of the restraining order.  Given that Sheryl made clear to the court that she was seeking only a renewal of the restraining order protecting her, and given the substance of the hearing, which did not involve custody or visitation issues, the court's oral pronouncement of its ruling should be given greater weight than the attachment to a previously-filed document in the clerk's transcript that purports to limit Evan's visitation with his children.

Thus, to the extent that the inclusion of the original form DV-140 as an attachment to the actual order being renewed (i.e., the original form DV-130), created ambiguity in the record, its inclusion was a clerical error.  (See

9

*Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1238 ["The difference between judicial and clerical error rests not upon the party committing the error, but rather on whether it was the deliberate result of judicial reasoning and determination.  The distinction between clerical error and judicial error is whether the error was made in rendering the judgment, *or in recording the judgment rendered*" (italics added)].)  In this case, anything reflected in the court's minute order filed after the hearing on Sheryl's request to renew the restraining order that appears to give effect to the no-visitation order in the original form DV-140 was clerical error.[7]

As Sheryl has pointed out in her briefing, any clerical error that arose as a result of the inclusion of the original DV-140 could have been corrected through a request by the parties in the trial court; an appeal was unnecessary.  "It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts.  [Citations.]  The power exists independently of statute and may be exercised in criminal as well as in civil cases.  [Citation.]  The power is unaffected by the pendency of an appeal or a habeas corpus proceeding." (*In re Candelario* (1970) 3 Cal.3d 702, 705.)

However, because the matter is currently before us, in the interest of judicial economy, we will direct the trial court to correct the clerical error and enter an amended minute order to reflect that the court's order renewing the

---

[7]     The minute order from the hearing includes marks on some boxes that suggest that the clerk completing the form mistakenly believed that the court's renewal order included an order regarding visitation because of the inclusion of the original form DV-140 as an attachment.  For example, the minute order includes marks next to boxes indicating (1) that "visitation" of the respondent was ordered, (2) that California was the children's home state, and (3) that no other state had assumed jurisdiction over the children.  As discussed in the text, it is clear that these boxes were marked in error.

2018 restraining order protecting Sheryl does not include any orders pertaining to jurisdiction over the parties' minor children or their custody and/or visitation.

## IV.

## DISPOSITION

The April 2021 order of the trial court renewing the 2018 restraining order protecting Sheryl is affirmed. The case is remanded to the trial court to correct the clerical errors reflected in the clerk's transcript by preparing an amended minute order that omits any reference concerning the court's jurisdiction over the minor children, or the custody of and/or visitation with the children. The minute order shall also clarify that the form DV-140 pertaining to child custody and visitation that is attached to Sheryl's 2018 request for a domestic violence restraining order is merely an historical record and is not to be given any legal effect through the court's order renewing the 2018 restraining order. Sheryl is entitled to costs on appeal.

AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

IRION, J.

11