Filed 11/7/24  In re E.C. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| In re E.C. et al., Persons Coming Under the Juvenile Court Law. | C099264 |
| BUTTE COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL SERVICES, | (Super. Ct. Nos. 22DP00213, 22DP00215) |
| Plaintiff and Respondent, | |
| v. | |
| C.S., | |
| Defendant and Appellant. | |

C.S., mother of minors E.C. and A.J., appeals from the juvenile court's orders entered at the six-month review hearing, finding mother had made adequate progress in mitigating the causes necessitating placement, continuing her reunification services, and adopting a new case plan.  (Welf. & Inst. Code, §§ 366.21, subd. (e), 395.)[1]  Mother contends that the evidence fails to support the juvenile court's finding that reasonable reunification services were provided.  While this appeal was pending, another panel of

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

1

this court reversed the juvenile court's jurisdictional orders as to minor A.J. (*In re E.C.* (May 24, 2024, C097741) opn. mod. June 7, 2024 [nonpub. opn.].) In light of that ruling, we conclude that mother's current appeal is moot with respect to minor A.J. With respect to minor E.C., we reject mother's contentions and affirm the orders entered at the six-month review hearing.

BACKGROUND

Our summary of the facts through disposition is taken primarily from our opinion in minors' parents' prior appeal. (*In re E.C.*, *supra*, C097741.)

I.

On September 13, 2022, the Butte County Department of Employment and Social Services (Department) filed petitions under section 300 with respect to minors E.C. and A.J. The petition concerning then-newborn E.C., filed pursuant to subdivisions (a) and (b), was based on mother's ongoing substance abuse, her use of methamphetamine during pregnancy, and the failure of E.C.'s father, S.C., to protect minor from mother's drug use. E.C. was born prematurely and tested positive for methamphetamine at birth. Mother received no prenatal care; she admitted to using methamphetamine two days before E.C. was born and on multiple other occasions during pregnancy. The petition additionally alleged that father was aware of mother's substance abuse and failed to protect E.C., that he had untreated substance abuse issues of his own, and that parents' substance abuse hindered their ability to provide protection, supervision, and care. The Department attempted to make a safety plan with father, but he failed to comply with the conditions of the plan by refusing to submit to a drug test. E.C. was subsequently ordered detained.

With respect to then-18-month-old A.J., the Department filed a nondetaining section 300 petition, pursuant to subdivision (b). The petition was based on mother's ongoing substance abuse, her use of methamphetamine during her pregnancy with A.J.'s half sibling E.C., and E.C.'s positive toxicology test at birth. Both parents were tested for drugs, and both tests were positive.

On November 1, 2022, the Department filed an amended section 300 petition with respect to A.J. The petition sought detention and added allegations that mother continued to use methamphetamine and " 'continues to allow her significant other, [father], into her home and engages in acts of domestic violence in front of the child, placing the child at risk of physical harm.' " (*In re E.C.*, *supra*, C097741.) A protective custody warrant was issued, and A.J. was ordered detained.

A single reunification case plan, filed on November 7, 2022, was prepared for minors and mother. The problem statement in the plan said: "On September 7th, mother and child tested positive for meth at birth—mother admits to using the day before the child was born—father was asked to drug test—he would not cooperate with the social workers after multiple conversations and home visits[.] [T]his lack of follow through resulted in the social worker[']s inability to assess his ability to adequately care [for] the child. Subsequently, there is an 18 month old half sibling in the home as well—a non-detained [petition] has been filed on this child. [¶] Additionally, [o]n November 3rd, 2022 a protective custody warrant was issued for [A.J.], the 18 month child in [mother's] custody. [A.J.] was removed from the home due to [mother's] four presumptive positive drug tests, inability to protect against [father]—including domestic violence incidences within the home, and lack of accountability in regard[] to her drug usage."

The Department's risk statement expressed concern that "mother's substance use, unhealthy relationship with the child's father, and lack of accountability" affected her ability to care for, supervise, and meet the needs of minors. To address these concerns, the case plan provided for case management services, general counseling to assist with learning to provide a clean and safe home, parenting education, and substance abuse services. The service objectives were for mother to stay free from illegal drugs and alcohol, accept responsibility for her actions by being candid about her use of substances and how it impacts minors' lives, and comply with medical or psychological treatment,

including by participating in counseling that would discuss how her drug use has affected her parenting and choice of partners.

The juvenile court assumed jurisdiction over both minors. With respect to minor E.C., the court's jurisdictional orders, entered on November 15, 2022, found each of the allegations in E.C.'s section 300 petition to be true, noting that parents' methamphetamine use posed a safety issue for a newborn child.

With respect to minor A.J., the juvenile court's jurisdictional orders, entered on December 8, 2022, acknowledged that drug use by a parent, standing alone, cannot support dependency jurisdiction. But the court noted that " 'substance abuse by a parent can be prima facie evidence of a parent's inability to provide regular care, resulting in substantial risk of physical harm. In particular—and a case may depend on the age of the child. And for children of tender years, substance abuse by a parent is prima facie evidence of such risk.' " (*In re E.C.*, *supra*, C097741.)

The juvenile court held E.C.'s dispositional hearing at the same time as A.J.'s jurisdictional hearing. The Department's disposition report noted that E.C. had both methamphetamines and amphetamines in her system at birth. Mother had smoked cigarettes daily during pregnancy and had not received any prenatal care. Due to E.C.'s exposure to controlled substances in utero, E.C. experienced withdrawal symptoms that had since improved.

The social worker reported that mother's untreated mental health issues appeared to be exacerbated by her substance abuse and that mother had demonstrated impaired judgment in meetings. Her behavior had become increasingly reactive and concerning, she was still being dishonest about her substance abuse, and she had not taken responsibility for her actions or E.C.'s exposure to drugs and withdrawal symptoms. Mother continued to believe that it was safe for father to be around her children, and she claimed to be unaware of his drug use. She could not verbalize how she would keep

4

minors safe from father if he was using drugs. The Department requested that E.C. be removed from parental custody and that mother be provided with reunification services.

The juvenile court adjudged E.C. a dependent child of the court and found reasonable efforts had been made to prevent the need for her removal. Removal was necessary, however, as there was a substantial danger to her physical health, safety, protection, or emotional well-being. The court ordered reunification services for mother but denied them for father.

The juvenile court held its dispositional hearing with respect to A.J. on January 24, 2023. The Department's disposition report recommended that she be removed and that mother be provided with reunification services. Mother had enrolled in an intensive outpatient drug treatment program but had difficulty admitting her substance use and the effect it had on her children. Her drug tests were all negative, and she had been visiting A.J. twice a week. Father had not visited and stated he was not interested in participating in services because minor should be returned to his care.

The juvenile court's dispositional orders declared A.J. to be a dependent child of the court and ordered her removed from parental custody. Mother was provided with reunification services, but father was bypassed for services pursuant to section 361.5, subdivision (b)(10) and (b)(11).

Parents appealed from the jurisdictional and dispositional orders.

II.

While that appeal was pending, on August 8, 2023, the juvenile court held the six-month review hearing for both minors. The social worker's report noted that parents were living together. Mother had graduated from the first eight-week phase of the Nurturing Parenting program, which included an anger management series that had a component on understanding domestic violence and its impact on children. Mother had also attended four sessions of the second eight-week phase but missed three sessions. Mother reported having a dispute with the facilitator and said she wanted to resolve the

dispute before renewing her participation. Mother had not, however, reached out to the service provider.

Mother also participated in four sessions of intensive group counseling relating to co-dependency. She did not meet the criteria for counseling services through Behavioral Health.

Mother had not drug tested since December 2022, despite numerous requests. In February 2023, mother had reported that she no longer felt like engaging with her substance abuse program because she regarded it as unnecessary for her recovery. She maintained that she had only used methamphetamine once while pregnant and addressed it as a " 'single mistake' " that had " 'caused no harm.' " Both parents stated that they had no further need for services and believed that minors could be safely returned to their home.

Before the contested six-month review hearing began, the juvenile court ordered parents to take a drug test and trailed the matter. When the court recalled the case, the Department informed the court that parents had refused to test. The court expressed disappointment at parents' refusal and informed them that it would be able to return minors if parents tested clean. Without clean tests, the court found that returning minors to parental custody would create a substantial risk of detriment to their physical or emotional well-being. The court also found that the Department had provided reasonable reunification services to mother and that mother had made adequate progress in addressing the problems leading to dependency. The court continued mother's reunification services.

DISCUSSION

On appeal, mother challenges the juvenile court's orders entered at the six-month review hearing with respect to both minors. She contends that the juvenile court's finding that she was provided with reasonable reunification services is unsupported by

6

the evidence. We conclude that her challenge with respect to minor A.J. is moot. We affirm the orders with respect to minor E.C.

I.

While the present appeal was pending, this court issued its decision in parents' appeal of the juvenile court's jurisdictional and dispositional orders. (*In re E.C.*, *supra*, C097741.) That decision concluded that there was sufficient evidence to support jurisdiction over E.C. but reversed the jurisdictional findings as to A.J. Regarding A.J., we held that the juvenile court had erred in applying the "tender years presumption" that our state Supreme Court had subsequently disapproved in *In re N.R.* (2023) 15 Cal.5th 520. We further concluded that there was insufficient evidence to support jurisdiction based on the alternative allegation in the petition that " 'mother continues to allow her significant other, [father], into her home and engages in acts of domestic violence in front of the child, placing the child at risk of physical harm.' " (*In re E.C.*, *supra*, C097741.) We noted: "The only evidence of ongoing domestic violence was [a] single incident in October 2022 where mother asked father about his methamphetamine use and she asked to see his phone. In response, father broke his phone and then took mother's phone and car. There is no evidence of any police involvement. Although mother sounded 'stressed' when she told the social worker about the incident, there was no evidence of violence, fear, threats, or anything else that would elevate the situation to one of domestic violence. All other prior reports of domestic violence were at least six years earlier and did not involve mother." (*Ibid.*)

Based on these conclusions, we reversed the juvenile court's December 8, 2022, orders asserting jurisdiction over minor A.J. based on the November 1, 2022, amended section 300 petition. We directed the juvenile court to vacate all subsequent orders stemming from those orders and ordered the court to hold a new jurisdictional hearing and to make new findings and orders. (*In re E.C.*, *supra*, C097741.)

After that decision became final, we gave the parties the opportunity to comment on the propriety of taking judicial notice of the decision and to address whether the decision rendered the present appeal moot as it relates to minor A.J. (See Evid. Code, § 459, subd. (d).) We now take judicial notice of our earlier opinion. (Evid. Code, § 452.)

We also conclude that mother's present appeal as to minor A.J. is moot. "A case becomes moot when events ' "render[] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief." ' [Citation] For relief to be 'effective,' two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*In re D.P.* (2023) 14 Cal.5th 266, 276.) These principles apply in juvenile dependency proceedings. (*Ibid.*)

Because we have reversed the jurisdictional orders as to A.J. and directed the juvenile court to vacate all subsequent orders as to her, mother can suffer no ongoing harm from the juvenile court's orders made at the six-month review hearing insofar as they apply to minor A.J. There is no further relief we can order beyond that which our prior decision already granted. We therefore dismiss mother's appeal as it relates to minor A.J.

## II.

With respect to minor E.C., we reject mother's contention that there is insufficient evidence to support the juvenile court's finding that she was provided with reasonable reunification services.

"When a child has been removed from a parent's custody, the court ordinarily must order child welfare services designed to facilitate the reunification of the family. (Welf. & Inst. Code, §§ 361.5, subd. (a), 362, subds. (c), (d); see, e.g., *Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 843 [69 Cal.Rptr.3d 96, 172 P.3d 402] (*Tonya M.*).) Such services may, depending on the case, include evaluations and assessments,

8

counseling, parent education, substance abuse treatment and testing, and other forms of assistance." (*Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 624.) "The adequacy of reunification plans and the reasonableness of [a child welfare agency's] efforts are judged according to the circumstances of each case." (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164.) To support a finding that reasonable services were offered or provided to the parent, the "record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . . " (*Id.* at p. 1165, italics omitted.) The services provided do not have to be the best possible; rather, they need only be reasonable under the circumstances. (*Elijah R. v. Superior Court* (1998) 66 Cal.App.4th 965, 969.)

We review for substantial evidence a juvenile court's determination that reasonable services have been provided. (*In re Christina L.* (1992) 3 Cal.App.4th 404, 413-414.) "When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012.)

Mother argues that the Department's petition alleged ongoing domestic violence between parents but the Department failed to include services in the case plan to address that issue. Because mother's arguments appeared to center on concerns with the case plan, rather than on the services provided under that plan, we allowed the parties an opportunity to submit supplemental briefing on whether mother had forfeited her current

arguments by failing to challenge the case plan in the juvenile court or on appeal from the dispositional orders. Having received a supplemental brief from mother, we conclude that her contentions are forfeited.

Contrary to mother's arguments, we think it clear that her present challenge is to the case plan itself and not to the services implementing that plan. Her briefs repeatedly assert that the Department's alleged inadequacy was in failing to include a component addressing domestic violence in the case plan. In addition, any failure by the Department to provide domestic violence services could not have stemmed from a failure to provide reasonable services in accordance with the case plan. That is because, as mother's briefing acknowledges, the plan did not include domestic violence services. The service objectives identified in the case plan were for mother to stay free from illegal drugs and alcohol, accept responsibility for her actions by being candid about her use of substances and how they impact minors' lives, and comply with medical or psychological treatment, including by participating in counseling to discuss how her drug use has affected her parenting and choice of partners. The case plan provided for case management services, general counseling, parenting education, and substance abuse services. It did not identify domestic violence prevention as a service objective or provide for domestic violence services. Thus, mother's arguments concerning the lack of domestic violence services are, in substance, a challenge to the case plan itself. (See *John F. v. Superior Court* (1996) 43 Cal.App.4th 400, 405 ["[P]etitioners are not, in truth, complaining regarding the adequacy of the reunification services. . . . [T]heir complaint is with the [juvenile] court's failure to [make an order] as part of the reunification plan"].)

Mother did not, however, timely challenge this alleged inadequacy. She did not object to the contents of the case plan at the dispositional hearing when the case plan was adopted. Nor did she assert deficiencies in the case plan in her appeal from the juvenile court's dispositional orders. Her current appellate arguments are therefore forfeited. (See *In re Dakota H.* (2005) 132 Cal.App.4th 212, 222 [parties forfeit claims of error on

10

appeal if they fail to raise their objection in the juvenile court]; *John F. v. Superior Court*, *supra*, 43 Cal.App.4th at p. 405 [parent forfeits challenge to case plan adopted at disposition by failing to raise such argument on appeal from disposition].)

Even if we were to construe mother's appeal as a challenge to the reasonableness of the reunification services, we would still reject it. Mother fails to explain how the anger management services provided to her were insufficient to address domestic violence issues. In addition, the case plan identified the problem leading to dependency and the removal of E.C. from parental custody—mother's substance abuse—and proposed counseling, parenting classes, and substance abuse services as the means to address that problem. These services were adequately "tailored to fit the circumstances of [this] family [citation], and . . . designed to eliminate those conditions which led to the juvenile court's jurisdictional finding." (*In re Dino E.* (1992) 6 Cal.App.4th 1768, 1777; § 362, subd. (c).) Further, while domestic violence was one of the bases for jurisdiction and removal of minor A.J., our prior decision reversed the jurisdictional and dispositional orders as to A.J. We thus see no basis on which to conclude that the services provided as to minor E.C. were inadequate under the circumstances.

DISPOSITION

As to minor A.J. (Butte County No. 22DP00215), the appeal is dismissed.  As to minor E.C. (Butte County No. 22DP00213), the orders of the juvenile court are affirmed.


    /s/                  
    FEINBERG, J.


We concur:


 /s/             
EARL, P. J.


 /s/             
HULL, J.